IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

WILLIAM FULP WRECKER )
SERVICE, INC., )
                                       Plaintiff, )
                                       v. ) 1:23CV368
MILLER TRANSFER AND )
RIGGING, CO., )
                                     Defendant. )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This case is before the Court on Defendant Miller Transfer and Rigging, Co.'s Motion for Judgment on the Pleadings. Plaintiff William Fulp Wrecker Service, Inc. brings this claim for unjust enrichment based on Defendant's failure to pay an invoice for work that Plaintiff did cleaning up the site of a single-vehicle accident involving one of Defendant's trucks. In the Answer and present Motion for Judgment on the Pleadings, Defendant argues that it paid an invoice for clearing wreckage from the site, and that the settlement of that invoice also applies to bar suit related to a separate invoice for environmental remediation at the site. For the reasons stated below, the Court concludes that the settlement and release on the first invoice is ambiguous with respect to whether it included the second invoice for environmental remediation. Therefore, the Court recommends that Defendant's motion be denied, without prejudice to further consideration after discovery on dispositive motions or at trial.

I.      FACTUAL ALLEGATIONS AND PROCEDURAL POSTURE

On April 7, 2020, a tractor trailer operated by Defendant Miller Transfer and Rigging Co. overturned on the side of a highway in Forsyth County, North Carolina. (Compl. [Doc. #3] ¶¶ 10-11.) The overturned truck spilled approximately twenty-five gallons of hydraulic fluids and over fifty gallons of motor oil and diesel fuel in the roadway and surrounding area. (Compl. ¶ 12.) Plaintiff alleges that as a result of this spill of hazardous material, the Winston-Salem/Forsyth County Office of Emergency Management contacted Plaintiff's company and directed it to "contain, clean-up, and remediate the impacted areas." (Compl. ¶ 14.) Plaintiff alleges that its hazmat crew arrived and worked on April 7, 2020, "to contain and minimize contamination of the impacted area and clear[] the roadway," and then returned again on April 10, 2020 "to complete the clean-up and remediation." (Compl. ¶¶ 15-16.) This work related to "hazardous material cleanup and remediation" and ground contamination. (Compl. ¶¶ 17-19, 22.) Plaintiff invoiced Defendant "for the hazardous material cleanup and remediation services" under Invoice 2111, dated April 22, 2020. (Compl. ¶¶ 19-20; Compl. Ex. A [Doc. #3-1] (Invoice 2111).) Invoice 2111 details emergency response and remediation work done by Plaintiff on April 7 and April 10, 2020, as well as subsequent testing and assessment by a geologist. The total cost of the work and fees billed in Invoice 2111 was $77,852.78. Defendant did not pay the invoice, despite Plaintiff's performing the remediation work on its behalf. (Compl. ¶¶ 20, 24-28, 33.)

Based on these allegations, Plaintiff brought this action in state court claiming that Defendant had been unjustly enriched by the environmental remediation work Plaintiff performed following the accident and for which Defendant had not paid. (Compl. ¶¶ 28-33.)

2

Specifically, Plaintiff alleges that Defendant received the benefit of Plaintiff's "hazardous material clean up and remediation services" without paying for the services. The matter was removed to federal court in this District on the basis of diversity jurisdiction on May 5, 2023 [Doc. #1]. Discovery is underway and closes on April 30, 2024.

In its Answer, Defendant states that the Parties reached a negotiated settlement related to Plaintiff's work "associated with the April 7, 2020 accident." (Answer [Doc. #5] at 5.) Defendant attached, as part of its Answer, a Release and Settlement Agreement and the invoice to which that Release referred, Invoice 2108 [Doc. #5-1]. The Release is dated April 23, 2020, and signed by Defendant on April 24, 2020, and the factual recitals in the Release state:

> A.  An incident occurred where Fulp's was called in to provide towing, storage and related charges for a roll over (the "Incident")[.]
>
> B.  As part of its services related to the Incident, Fulp's issued Invoice 2108 attached hereto as Exhibit A.
>
> C.  The invoice claims a total due of $185,377.50, related to removal of the tractor, trailer and oversized cargo from the Incident site, transportation of the same to Fulp's yard, and storage at Fulp's yard thereafter.
>
> D.  Miller Transfer disputes that the sum charged is fair and reasonable for the services performed.
>
> E.  After consultation and negotiations, Fulp's and Miller Transfer have concluded that it would be in their best interests to fully settle and compromise the controversies among them on the terms and in the manner provided for in this Agreement.
>
>     . . . .
>
> 3.  <u>Mutual Release Related to Invoice 2108</u>.  Each party to this Agreement shall and does immediately RELEASE and DISCHARGE the other, including all officers, directors, members, agents, employees together with customers, business partners, representatives, insurers, affiliated or parent companies,

3

successors and assigns, from all rights, claims, actions, causes of action, suits, debts, accounts, contracts and demands whatsoever and however arising, whether known or unknown, foreseen or unforeseen, patent or latent, which they may now have or may have after the signing of this Agreement related in any way to Invoice 2108 attached hereto as Exhibit A.

(Release and Settlement Agreement [Doc. #5-1] at 1-2.)

Invoice 2108 lists various charges, primarily based on a "[p]rice per pound" for a "super load recovery" of a rollover tractor trailer off the roadway. It also includes a charge for "hauling" and for "light towers." It does not detail what date the work reflected in it was performed, but the invoice itself is dated April 9, 2020, prior to the additional environmental remediation work performed on April 10, 2020.

Defendant now moves for judgment on the pleadings [Doc. #13], on the basis that the release as to Invoice 2108 [Doc. #5-1], unambiguously applies to bar Plaintiff's claim as relates to Invoice 2111 [Doc. #3-1].

II.     LEGAL STANDARD

The standard for granting judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as for granting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002). A plaintiff fails to state a claim upon which relief may be granted under Rule 12(b)(6) when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

In deciding a defendant's Rule 12(c) motion, the court assumes the facts alleged in the complaint are true and draws all reasonable inferences in the plaintiff's favor. Priority Auto

4

Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014); accord Benitez v. Charlotte-Mecklenburg Hosp. Auth., 992 F.3d 229, 235 n.5 (4th Cir. 2021). In addition, the court may consider the answer to the extent it does not conflict with the complaint, and may consider documents attached to the complaint or to the answer if the documents are integral to the plaintiff's claims and their authenticity is not challenged. See Massey v. Ojaniit, 759 F.3d 343, 347 (4th Cir. 2014); Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013).

A Rule 12(c) motion should be granted only if, when taking all of the non-moving party's factual allegations as true, no genuine issues of material fact remain and the case can be determined as a matter of law. Mendenhall v. Hanesbrands, Inc., 856 F. Supp. 2d 717, 724 (M.D.N.C. 2012).

> Notably, because the burden of establishing an affirmative defense, such as a release agreement, rests on the defendant asserting it, a motion under Rule 12(c) is generally not the appropriate vehicle to mount such a challenge. It is only in the rare circumstances where all facts necessary to deciding the issue clearly appear on the face of the pleadings that the Court will reach an affirmative defense through a motion under Rule 12(c).
>
> When asked to enter judgment on the pleadings on the basis of a plaintiff having signed a release agreement, the Court conducts a two-step analysis to determine (1) whether the release agreement is valid; and (2) if it is, whether the agreement's plain language bars the plaintiff's claims. Under North Carolina law, when the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the Court, and the Court cannot look beyond the terms of the contract to determine the intentions of the parties.

Justad v. Bank of Am. Corp., No. 1:17CV219, 2017 WL 3432293, at *2 (M.D.N.C. Aug. 9, 2017) (internal brackets, ellipses, and quotations omitted), report and recommendation adopted, No. 1:17-CV-219, 2017 WL 11019067 (M.D.N.C. Sept. 11, 2017); accord Harris v. Ann's House of Nuts, No. 4:13-CV-0039-BO, 2013 WL 5592936, at *2 (E.D.N.C. Oct. 10, 2013).

III. DISCUSSION

Defendant argues that the April 23, 2020, Release and Settlement Agreement [Doc. #5-1] unambiguously applies to any claim related to the underlying incident which gave rise to Invoice 2108. In response, Plaintiff argues that the release unambiguously applies only to claims related to Invoice 2108 for removal of the rollover, but not to Invoice 2111 related to the separate environmental response and remediation. Because the Parties do not dispute the validity of the release, the Court will instead focus on whether the agreement contains plain, unambiguous language on its face that bars Plaintiff's claim related to Invoice 2111.

Under North Carolina law,

> Written contracts are to be construed and enforced according to their terms. They must receive a reasonable interpretation, according to the intention of the parties at the time of executing them, gathered from the language employed by them. When the language of a contract is clear and unambiguous, effect must be given to its terms, and its terms may not be contradicted by parol or extrinsic evidence.
>
> Further, a contract's meaning and effect is a question of law for the court—not the jury—when the language of the contract is clear and unambiguous. And the terms of an unambiguous contract are to be taken and understood in their plain, ordinary and popular sense, and harmoniously construed to give every word and every provision effect.
>
> An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations. An ambiguity can exist when, even though the words themselves appear clear, the specific facts of the case create more than one reasonable interpretation of the contractual provisions. If a written contract is ambiguous, the contract's meaning and effect is a factual question for the jury and parol evidence may be introduced not to contradict, but to show and make certain what was the real agreement between the parties.

Galloway as Tr. of Melissa Galloway Snell Living Tr. Dated May 1, 2018 v. Snell, 384 N.C. 285, 287-88, 885 S.E.2d 834, 836 (N.C. 2023) (internal quotations and citations omitted). The Court of Appeals for the Fourth Circuit has further observed that:

6

> Ambiguity arises only when a contract may be understood in more than one way or when it refers to two or more things at the same time. Stated differently, a contract's term is ambiguous if it is susceptible to more than one reasonable construction. Such ambiguity may be patent or latent. Patent ambiguity exists when the language of the contract itself reveals that it can be interpreted in more than one way. Latent ambiguity, although less common than patent ambiguity, arises where language although appearing perfectly clear at the time the contract is formed, because of subsequently discovered or developed facts, may reasonably be interpreted in either of two ways.

Lion Assocs. v. Swiftships Shipbuilders, LLC, 475 F. App'x 496, 501 (4th Cir. 2012) (internal citation, brackets, and quotations omitted).

Here, in considering the Parties' briefs, the Court notes first that, unlike the case upon which Defendant primarily relies, the Release in this case did not include broad language releasing Defendant from "any and all past, present or futu[]re claims, demands, obligations, actions, causes of action which the Plaintiff now has, or which may hereafter accrue." (Def. Br. [Doc. #14] at 11-13 (citing Goodwin v. Cashwell, 102 N.C. App. 275, 279, 401 S.E.2d 840, 843 (N.C. App. 1991) (ellipses and parenthetical omitted).) Rather, the language in the Release was much more limited and qualified and, while using sweeping and final language, limited that release language to claims specifically "related in any way to Invoice 2108." (Release and Settlement Agreement ¶ 3.)

Invoice 2108 in turn did not mention the incident at all and simply includes the fee for the "Roll over off road ways super load recovery," plus hauling and storage work that all appears to be separate from the environmental remediation and hazardous material disposal work reflected in Invoice 2111. While Invoices 2108 and 2111 are both apparently related to work performed after the April 7, 2020, incident, Invoice 2111 is not thereby necessarily "related" to Invoice 2108. Indeed, Invoice 2108 was issued on April 9, 2020, prior to the

7

additional remediation work on April 10, 2020. Invoice 2111 does not appear to be a change order to Invoice 2108. It does not appear to be an amendment or addenda to Invoice 2108. Thus, Invoice 2111 could reasonably be interpreted as an entirely separate invoice, though involving the same Parties and, presumably, arising from the same incident, though neither the Release and Settlement Agreement nor the invoices make this clear.

The primary basis upon which Defendant relies to argue that Invoice 2108 is related to Invoice 2111 is the fact that both invoices involve the same Parties and that they both "bill $3,500 for one lane closure." (Def.'s Br. at 7-8.) However, a review of the invoices with all inferences made in Plaintiff's favor, reveals that this was not one lane closure but two: one that occurred before April 9, 2020, when invoice 2108 was issued [Doc. #5-1], and one that occurred on April 10, 2020, according to Invoice 2111 [Doc. #3-1]. Additionally, simply because the same parties are involved in multiple transactions does not mean that a release as to one is a release to all if the release itself is silent on this point and qualifies itself as to only one transaction.

Relatedly, as to Defendant's argument that the Release should be read to include claims related to Invoice 2111 because, had the Parties wanted to exclude claims related to Invoice 2111 from that agreement they could have specifically done so (Def.'s Br. at 8, 10-11), the inverse is equally true: had the Parties wanted to include claims related to Invoice 2111 in that agreement they could have specifically done so. They did not. The Release is entirely silent as to Invoice 2111. Despite presumably knowing of Invoice 2111—dated April 22, 2020—at the time of the settlement agreement on April 23, 2020, and therefore knowing that it, from its face, involved work apart from the "removal of the tractor, trailer and oversized cargo from

the Incident site, transportation of the same to Fulp's yard, and storage at Fulp's yard thereafter," (Release and Settlement Agreement at 1), the Parties nevertheless specified that the release in this case related only to Invoice 2108, and not the underlying incident itself, and with no reference to Invoice 2111 or environmental restoration and remediation.

Indeed, the Parties specifically identified the April 7, 2020 crash as the "Incident" but nevertheless chose to qualify the release as applying not to claims arising from or related to the "Incident," but rather to disputes about Invoice 2108 itself, which the agreement recognized reflected only "part of [Plaintiff's] services related to the Incident." (Release and Settlement Agreement at 1-2.) Neither did the Parties use universal release language but rather, again, qualified the release as being "Related to Invoice 2108." And, again, that invoice, rather than being related to all of the work performed as a result of the "Incident," reflected only a "part of [Plaintiff's] services related to the Incident" and in fact "related to removal of the tractor, trailer and oversized cargo from the Incident site, transportation of the same to Fulp's yard, and storage at Fulp's yard thereafter," only. Plaintiff's Complaint does not raise a claim based on Invoice 2108, or apparently, any of the work detailed and billed in that invoice.

Thus, while Defendant is right that the language in the release denotes finality and an intention to "fully settle," it is not clear that this finality extends beyond an agreement that the controversies arising from Invoice 2108 and its discrete charges are fully settled. Either the phrase "related in any way to Invoice 2108" means "related in any way to the incident underlying Invoice 2108"—which is possible but by no means unambiguously clear from the document—or "related in any way to the charges and services detailed in Invoice 2108"—

9

which would not bar the separate charges in Invoice 2111 and is also possible but by no means the only reasonable reading of the document.

Thus, while the Court concludes that the contract language does not unambiguously support Defendant's purported clear reading of the release, neither does it wholly preclude it. The language of the Release and Settlement Agreement is such that either Party could be correct, thus highlighting the nature of the ambiguity. To the extent that Defendant seeks judgment in its favor on the basis that the Release unambiguously reads in its favor to bar Plaintiff's claims related to Invoice 2111, Defendant has failed to meet its burden under Rule 12(c).[1] Therefore, the Court will recommend that Defendant's Motion for Judgment on the Pleadings be denied. The Court notes that the Parties are presently in discovery, and these issues can be considered further after the close of discovery on dispositive motions or at trial.

IV. <u>CONCLUSION</u>

IT IS THEREFORE RECOMMENDED that Defendant's Motion for Judgment on the Pleadings [Doc. #13] be DENIED.

This, the 2nd day of February, 2024.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge

---

[1] Defendant's argument that no parol evidence is permitted or required to understand the scope of the Release is essentially the same as the one it makes in terms of ambiguity. However, as noted above, the Court has concluded that the Release is ambiguous.